1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

10
11
12
13
14
15
16

| | |
|---|---|
| ROBERT BENNETT and MEG BENNETT,<br><br>               Plaintiffs,<br><br>     v.<br><br>HOMESITE INSURANCE COMPANY,<br><br>              Defendant. | CASE NO. C21-1422 MJP<br><br>ORDER ON MOTION TO COMPEL APPRAISAL, MOTION FOR SANCTIONS, AND MOTION TO LIMIT TESTIMONY |

17
18
19
20
21
22
23
24

     This matter comes before the Court on Plaintiffs' Motion to Compel Appraisal of ALE (Dkt. No. 48), Plaintiffs' Motion for Sanctions Re Appraisal of ALE (Dkt. No. 50), and Defendant's Motion to Limit the Testimony of Plaintiffs' Expert Witness Dennis Smith (Dkt. No. 54). Having considered the Motions, the Oppositions (Dkt. Nos. 51, 57, 61), the Replies (Dkt. Nos. 56, 59, 67), and all supporting materials, the Court: (1) GRANTS Plaintiffs' Motion to Compel Appraisal; (2) DENIES Plaintiffs' Motion for Sanctions; and (3) DENIES Defendant's Motion to Limit Testimony.

**BACKGROUND**

**A.      Facts Relevant to Motion to Compel Appraisal**

Meg and Robert Bennett live in Black Diamond, Washington, where they own a house insured by Homesite. A fire in the home on December 8, 2020 made the residence uninhabitable. Homesite disputes the amount of the loss claimed, and, in particular, the Parties have not agreed on the additional living expenses that the Bennetts claimed to have incurred as a result of the fire.

Before filing suit, the Bennetts demanded an appraisal, as is permitted under their policy, without placing any limits on the scope of the appraisal. (Dkt. No. 41 at 148.) The Parties agree that the appraisal was intended to address all of the disputed loss, including the home damage and additional living expenses (ALE). (See Pls. Mot. to Compel Appraisal at 3-4; Def. Opp. to Pls. Mot. for Partial SJ at 2, 5, 10 (Dkt. No. 26).) Indeed, Homesite opposed Plaintiffs' Motion for Partial Summary Judgment as to the ALE, in part, on the theory that "[t]he appraisal process involves all parts of Plaintiffs' claim, including ALE coverage" and that the Court should "at the very least, continue the hearing on the Motion until after the appraisal is completed." (Def. Opp. to Pls. Mot. for Partial SJ at 5, 10.) Homesite also argued that the dispute over ALE was irrelevant because the limits for ALE had already been paid. The Court ultimately allowed Homesite more time to oppose the summary judgment motion to gather further testimony and discovery. (Dkt. No. 34.)

The appraisal process completed in early May 2022, which determined the replacement cost value. (Dkt. No. 41 at 5.) But the appraisal did not include any determination on the ALE. (Id.) A week after the appraisal award, the Bennetts' counsel demanded that the appraisal proceed to address the ALE. (Declaration of Joel Hanson Ex. A (Dkt. No. 49).) A little more than a month later, Homesite's appraiser, Dallas Kaemmerling, said that he could "knock this out

easy," but needed to check with Homesite for approval. (Hanson Decl. Ex. E (Dkt. No. 49 at 20).) About two weeks later, Kaemmerling reported that he did not "have any indication that there is an agreement between the parties that we are to appraise" ALE and that "[o]ur initial direction was not to appraise a LE [sic] since it was already paid out at the limit." (Hanson Decl. Ex. F (Dkt. No. 49 at 23).) In opposition to the Motion to Compel, Kaemmerling now maintains that "[a]t the beginning of the appraisal process, Homesite did not specifically instruct [him] to not appraise ALE." (Declaration of Dallas Kaemmerling ¶ 4 (Dkt. No. 53).) He also claims— through hearsay—that the appraisal panel never discussed ALE because "the panel knew that ALE coverage had been paid out in full already so there was nothing to discuss." (Id. ¶ 2.)

**B.    Facts Relevant to the Motion to Limit Testimony**

Homesite contends that the Bennetts failed to timely provide their expert's "expert file" in advance of his deposition and to supplement his report. The Court reviews the relevant facts.

The Bennetts have retained Dennis Smith as a claims handling expert. He served his written report on June 8, 2022. (Harris Decl. ¶ 2, Ex. A.) After serving Smith's report, the Bennetts' counsel then disclosed to Homesite in a July 24 email that Smith had new opinions to offer about events that transpired after he served his June 8th report. (Harris Decl. ISO Reply Ex. A (Dkt. No. 68-1).) But Smith has not authored or signed the supplemental opinion. Counsel alone—by email—disclosed the new opinions in summary form.

Homesite has sought to depose Smith and obtain his expert file. Homesite served a subpoena on Smith, commanding him to produce his expert file by August 4, 2022. (Harris Decl. Ex. C.) But in another subpoena served the very same day, Homesite commanded Smith to appear for a deposition and produce his expert file on August 10, 2022. (Harris Decl. Ex. B; Harris Decl. ¶¶ 3-4.) Smith did not produce his expert file until August 10, after Homesite raised

1    the issue on August 9th—the day before his scheduled deposition. Homesite's counsel admitted

2    that "[i]t was not until yesterday [August 9th] that I realized that your expert failed to comply"

3    with the subpoena." (Dkt. No. 55-5 at 2.)

4         The parties dispute whether Homesite adequately met and conferred with the Bennetts

5    before filing the motion. Homesite first raised the issue of Smith's compliance with the subpoena

6    on August 9th, the day before Smith's scheduled deposition. (Declaration of Eliot Harris ¶ 5

7    (Dkt. No. 55).) Counsel for the Bennetts apparently promised to produce Smith's expert file by

8    the end of the day, but did not do so until 11:00 AM on August 10, 2022. (Id. ¶¶ 5-6, 9.) Counsel

9    for Homesite suggested that they reschedule the deposition or limit the deposition to the

10   materials set out in Smith's June 8th expert report. (Id. ¶ 7.) Counsel exchanged emails on

11   August 10, 2022 about the deposition and document production. (Id. ¶ 10.) Counsel for Homesite

12   then sought confirmation that Smith had produced his full expert file and that he would not offer

13   any opinions not contained in his expert file. (Id. ¶ 10.) Homesite threatened to move to limit

14   Smith's testimony by filing a motion on August 11, 2022 if Homesite did not hear back from

15   Plaintiffs. (Id.) Counsel for Homesite made five unanswered telephone calls to counsel for the

16   Bennetts to confer about Smith's deposition and report, but was unable to reach counsel for the

17   Bennetts. (Id. ¶¶ 11-14.) But Homesite's counsel notes that the Bennetts' counsel was

18   responding to emails contemporaneously. (Id. ¶¶ 12-13.) Homesite then filed the motion to

19   exclude on August 11, 2022 without having conferred by phone, video, or in person after the

20   August 9, 2022 telephone call.

21

22

23

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# ANALYSIS

**A.      Motion to Compel Appraisal**

The Homesite policy at issue allows either party to "demand an appraisal of the loss" if the parties "fail to agree on the amount of loss." (Homeowners 3 – Special Form – Washington, Section 1-Conditions (F) (Dkt. No. 11-1 at 36).) Under Washington law, appraisal provisions are enforceable and are intended to provide an efficient means of resolving valuation disputes. See Keesling v. W. Fire Ins. Co. of Fort Scott, Kansas, 10 Wn. App. 841, 846-47 (1974).

Under the plain terms of the insurance policy at issue and longstanding Washington law, the Bennetts are entitled to an appraisal of the ALE. Homesite previously agreed that ALE was subject to appraisal. Indeed, Homesite earlier argued that the Court should "at the very least, continue the hearing on the Motion [for Partial Summary Judgment re: ALE] until after the appraisal is completed." (Def. Opp. to Pls. Mot. for Partial SJ at 5, 10.) Homesite has now abandoned this position, arguing that an appraisal of ALE would serve no purpose because it has paid the limits on ALE. But the ALE limits were paid well before Homesite made its initial request for the Court to stay the dispute over ALE until the appraisal was completed. The change in position lacks any principled basis and Homesite has identified no Washington law that would render an appraisal provision unenforceable where the limits have been paid. And, as the Bennetts point out, the appraisal is relevant to their extra-contractual claims. The Court therefore GRANTS the Motion and ORDERS Homesite to participate in the appraisal of the ALE. Given Homesite's appraiser's representation that he could "knock this out easy," the Court ORDERS that the appraisal be completed within two weeks of this Order. (See Dkt. No. 49 at 20.)

1

**B.     Motion for Sanctions**

2       The Bennetts ask the Court to sanction Homesite for making purportedly false and

3  misleading representations to the Court in its opposition to Plaintiffs' Motion for Partial

4  Summary Judgment as to ALE ("Opposition"). Specifically, the Bennetts maintain that Homesite

5  misled the Court to believe that it would participate in the appraisal of ALE when it had already

6  directed its appraiser not to do so.

7       Imposing sanctions under Rule 11 is "an extraordinary remedy, one to be exercised with

8  extreme caution." Operating Eng'rs Pension Trust v. A–C Co., 859 F.2d 1336, 1345 (9th Cir.

9  1988). And the Bennetts have the burden of proving that sanctions under Rule 11 are warranted.

10  See Tom Growney Equip., Inc. v. Shelley Irr. Dev., Inc., 834 F.2d 833, 836 (9th Cir. 1987).

11       The Bennetts fail to demonstrate by a preponderance of the evidence that Homesite's

12  Opposition misled the Court as to its willingness to participate in the appraisal of ALE. The

13  Court reviews the salient facts.

14       In its February 2022 Opposition, Homesite unambiguously represented that ALE was part

15  of the appraisal process and that the Court should withhold ruling on the summary judgment

16  motion until the appraisal was concluded. (Def. Opp. to Pls. Mot. for Partial SJ at 5, 10; see also

17  Declaration of Tyler Berry ¶ 12 (Dkt. No. 28).) For example, Homesite wrote: "[t]he appraisal of

18  Plaintiffs' claim is currently ongoing, and the appraisers are evaluating the Plaintiffs' ALEs,

19  which is the precise issue that is the subject of Plaintiffs' Motion." (Def. Opp. to Pls. Mot for

20  Partial SJ at 10.) And counsel's declaration in support of the Opposition contended that "[t]he

21  appraisers' findings, as well as Plaintiffs' discovery responses, will greatly inform the questions

22  asked at Plaintiffs' depositions." (Declaration of Eliot Harris ¶ 8 (Dkt. No 27).)

23

24

1        At some point, Homesite took a contrary position and directed its appraiser, Dallas

2    Kaemmerling, <u>not</u> to appraise ALE. The problem for the Bennetts is that the record remains

3    unclear as to whether this occurred before or after the filing of the Opposition. Kaemmerling

4    wrote in July 2022 that his "initial direction was not to appraise a LE [sic] since it was already

5    paid out at the limit." (Dkt. No. 49 at 23.) But it is unclear when Kaemmerling received this

6    "initial direction." He was retained in September 2021, shortly after Homesite invoked the

7    appraisal provision in August 2021, and Homesite then paid the ALE limits by December 2021.

8    (<u>See</u> Kaemmerling Decl. ¶ 1; Dkt. No. 41 at 148; Declaration of Eliot Harris Ex. A (Dkt. No. 52-

9    1).) It is possible that after Homesite paid ALE limits in December 2021 but before Homesite

10   filed its Opposition in February 2022 that Homesite told Kaemmerling not to appraise ALE. But

11   this is merely a possibility. And Kaemmerling's declaration does not add any clarity. He merely

12   asserts that "[a]t the beginning of the appraisal process, Homesite did not specifically instruct me

13   not to appraise ALE." (Kaemmerling Decl. ¶ 4.) But the beginning of the appraisal process was

14   in August 2021 and he does not say when he was told not to appraise ALE. So Homesite's

15   citation to Kaemmerling's declaration does not support its broad claim that "[n]either at the

16   outset of the appraisal—nor at any point before the May 4, 2022 appraisal award—did Homesite

17   instruct Mr. Kaemmerling not to appraise ALE." (Def. Opp to Mot. for Sanctions at 2 (citing

18   Kaemmerling Decl. ¶¶ 2-4).) That statement is unsupported by any evidence in the record and is

19   not well taken. This overstatement aside, on this record, the Court cannot determine when

20   Homesite instructed Kaemmerling not to appraise ALE.

21        Given the ambiguity and the "extreme caution" that the Court employs in assessing Rule

22   11 sanctions, the Court does not find that Homesite's Opposition misled the Court as to the

23   appraisal of ALE. <u>See</u> <u>Operating Eng'rs</u>, 859 F.2d at 1345. While the Court is troubled by

24

ORDER ON MOTION TO COMPEL APPRAISAL, MOTION FOR SANCTIONS, AND MOTION TO LIMIT
TESTIMONY - 7

1   Homesite's changed litigation position, it does not find that sanctions are warranted on the

2   record. The Court DENIES the Motion for Sanctions.

3   **C.     Motion to Limit Testimony**

4       Homesite moves to limit Smith's testimony to his June 8th report on the theory that he

5   failed to comply with a subpoena to provide his expert file in advance of his deposition and did

6   not properly supplement his written report. The Court DENIES the Motion.

7       First, the Court finds that Homesite failed to satisfy its obligations to meet and confer

8   before bringing this motion. See Local Rule 37(a)(1). Homesite gave counsel for the Bennetts an

9   extremely limited amount of time in which to participate in a telephonic or video meet and

10  confer before hastily filing the Motion. Nor has Homesite justified the rush to file the Motion.

11  Homesite could have timely raised its concerns about the email supplementation of Smith's

12  report sent on July 24th or the purported failure to comply with the August 4th production

13  deadline. Instead, Homesite waited until August 9th—the day before Smith's deposition—to

14  raise both issues. And given Homesite's decision to postpone Smith's deposition, there was no

15  need to short-circuit the meet and confer process simply to get the motion on file. The Court is

16  not convinced that Homesite's tactics reveal a good faith effort to resolve this dispute without

17  Court intervention as required by the Local Rules. This is the first basis on which the Court

18  DENIES the Motion.

19      Second, the Court disagrees with Homesite's position that Smith failed to timely produce

20  his expert report. Homesite served two subpoenas on the same day for the same expert file to be

21  produced on two different dates—August 4 and August 10. With two production dates, it was not

22  unreasonable for Smith to believe he had to produce his file on August 10. And had Homesite

23  believed the August 4th production deadline was binding, it should not have waited 5 days to

24

ORDER ON MOTION TO COMPEL APPRAISAL, MOTION FOR SANCTIONS, AND MOTION TO LIMIT
TESTIMONY - 8

raise its concern about Smith's lack of production. While the Bennetts could have sought

clarification about the production deadline, Homesite did nothing to pursue its rights in a timely

manner. On this record, the Court finds the production on August 10th timely. This is the second

basis on which the Court DENIES the Motion.

That said, the Court agrees with Homesite that counsel's July 24th email was not an

adequate means of supplementing Smith's report. The Federal Rules require the expert to sign

the report, and no exception to this rule is set forth for supplementation. See Fed. R. Civ. P.

26(a)(2)(B), 26(e). Counsel's email outlining new topics of the expert's opinions falls far short of

these disclosure requirements. While this might justify limiting Smith's testimony to his June 8th

report and those materials produced on August 10, 2022, the Court does not believe exclusion to

be the proper remedy.

Given that the Parties share responsibility for the failure to have Smith's deposition

timely proceed without needless expenditure of vitriol and judicial oversight, the Court DENIES

the Motion. The Court instead ORDERS the following: (1) Smith must serve on Homesite a

written, signed supplementation to his June 8th report with all supporting materials within 6 days

of this Order; and (2) Homesite must complete its deposition of Smith within 7 days of the

supplementation. If Smith chooses not to supplement his June 8th report, he must serve a

certification to Homesite within 6 days of this Order and Homesite must then complete his

deposition within 7 days of the certification.

## CONCLUSION

The Court GRANTS the Bennetts' Motion to Compel Appraisal, which must be

completed by the appraisal panel within two weeks of this Order. But the Court DENIES the

1   Bennetts' Motion for Sanctions given the ambiguity as to whether Homesite misled the Court.

2   And the Court DENIES Homesite's Motion to Limit Smith's Testimony.

3       The three Motions subject to this Order showcase the Parties' failure to work together

4   constructively on issues where commonsense resolution was clearly possible. The Court urges

5   the Parties to focus their energy on getting to the merits of the dispute, rather than expending

6   needless time and resources on minor issues. And the Court reminds the Parties to craft their

7   arguments carefully and based only on what the record supports.

8       The clerk is ordered to provide copies of this order to all counsel.

9       Dated September 20, 2022.

10

11   Marsha J. Pechman
     United States Senior District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON MOTION TO COMPEL APPRAISAL, MOTION FOR SANCTIONS, AND MOTION TO LIMIT
TESTIMONY - 10